We'll hear argument next in Case 12-1493, Abramski v. United States. Mr. Dietz. Mr. Chief Justice, and may it please the Court, in 2009, Bruce Abramski went to a gun store in his home in Virginia and purchased a firearm. When he did so, he filled out all the required Federal paperwork providing his own name and identifying information and passing a background check. He then traveled to his uncle's home in Pennsylvania and delivered the firearm to a licensed gun dealer there. That gun dealer required Mr. Abramski's uncle to fill out the exact same Federal paperwork and pass his own background check before taking possession of the firearm. But despite doing precisely what Congress established as the process to buy a firearm intending to sell or give it to a lawful gun owner in another State, the government charged Mr. Abramski with falsely stating that he was the actual buyer of the firearm when he acquired it. And that term, actual buyer of the firearm. Sotomayor, what would happen if two people walk into the gun store, one person hands the money to the other, and says, buy me that gun? Is that not actionable, according to your theory? Your Honor, in the circumstance where there are two lawful gun owners, that is permissible. I think a good way to illustrate that is to consider the government's concession that in that hypothetical, if two people walked into the gun store and the person looked and said, I'd like that gun, and points to the counter, then the person standing there. Sotomayor, what's truthful about saying you're the buyer of the firearm? Scalia, please finish what you were saying. I didn't understand what your point was. Yes, Your Honor. In that circumstance, if the person standing at the counter then says, I'd like to buy that firearm that the person indicated, I'm going to give it to that person, then even the government concedes that in that circumstance, everything about that sale is perfectly lawful, and the buyer can take the gun, hand it to that person standing next to him, who would leave the gun store with the gun dealer and the government having absolutely no idea who that person is or where the gun is going. I'm sorry. So you're saying that in that case, the gun dealer runs the background check on the defendant of the gun, is that what you're saying the statute requires? That's correct, Your Honor. I think the government concedes that as well, in the gift circumstance at least. And there's certainly nothing in the Gun Control Act that suggests that Congress was distinguishing between those two circumstances at all. Well, in the gift situation, but Congress requires certain information from the buyer, whatever that means, right? Yes, Your Honor.  Yes, Your Honor. And the address of the buyer, and do an instant check on the buyer? Yes, Your Honor. Now, why would Congress have wanted those things with respect to the person who's just the straw purchaser, not the person who's actually going to acquire the weapon? The reason, Your Honor, is that this legislation, the way Congress designed it, is not focused on sort of the end point. It's not concerned about where a gun is actually going, who's ultimately going to receive it. What Congress was concerned about was the starting point, because as part of the key political compromise of the Gun Control Act, there were two competing interests that needed to be accommodated. Why would they be concerned about the starting point? Let's say there's a man, Mr. Straw, and he holds himself out as a gun buyer. He puts, you know, a website, he creates a website, he has something in the yellow pages under Straw Man, and he says, you want to acquire a gun and you don't want the user name and you don't want to have an instant check on you, you come to me. And so these people come to him, and whenever they do, he goes to Joe's Gun Shop and with the other person, he says, I want to buy a gun, but this fellow with me is going to do all the talking. So the guy who's with him talks with Joe about different types of guns, costs and everything, and after that's done, you know, the person who's done all the talking says, now my friend, Mr. Straw, is going to buy this gun. He gives Mr. Straw the money, Mr. Straw buys the gun, and the dealer writes down Mr. Straw's name for the 15th time that month, his address, does another instant check on it. What sense does that make? Clements, Jr.: Your Honor, I think, and to your first point about why, why starting points, the reason is because all that Congress wanted is to provide law enforcement with a way to trace the firearm. And if you have truthful, accurate information about the first initial purchaser, the person who walks out of a gun store with a gun in their hand, then law enforcement has that starting point if they need to trace the firearm. Scalia, I suppose that your answer to what sense it makes is that was the compromise, that there was strong opposition to any gun control law, and the condition was you get the buyer, and you don't make the buyer promise not to give it to somebody else, he could immediately give it to somebody who's unqualified to own the gun, couldn't he? And would that be a violation? Clements, Jr.: Your Honor, that would violate other laws, because Congress in the Firearm Owners Protection Act clarified that or amended the provision to provide that a private citizen who transfers a firearm to someone they know or have reasonable cause to believe is prohibited, that's a crime. Scalia, what about somebody who is qualified to own a firearm? Can I take a firearm that I own and say, you know, it's yours? Clements, Jr.: Yes, Your Honor. And I think the government has conceded that. If it's someone in your own State, there's no reason to give it to somebody else. Scalia, I don't have to register it? I don't have to go through a firearm dealer, right? It's my gun, and I can give it to somebody else who's qualified. Clements, Jr.: That's correct, Your Honor. And in cases like Mr. Abramski's case where his uncle lived in another State, Congress provided a path for those people as well, and that is you have to deliver the firearm to another dealer in that State before finishing the transfer. Scalia, you're never going to know who the end user is once the gun is sold, whether you take the, you know, the straw buyer's name or the other person's name or both. You don't know where the gun's going to end up, do you? Clements, Jr.: Yes, that's right, Your Honor. And that's because that was the key compromise of the law. Breyer, what if it matters in a statute? I mean, I do believe that. And here the relevant language seems to me that what it's material to, the government says, is the statute about selling or delivering. Now, did this person, was he the buyer, your client? Was he somebody that they sold or delivered it to? Well, he's a straw. A straw purchaser is someone who doesn't purchase. The person who purchases is the person who uses the straw. Now, you can't say that about a giver. A benefactor is, is, is, who's the beneficiary of the benefactor is not the purchaser. But the straw purchaser is not the purchaser. And it comes from straw bale, where someone else put up the bale. And it was called straw because the people who made a career of that used to wear straw in their shoes. Interesting. But in terms of, in terms of this case, the straw is not. Scalia, He made that up. Breyer, What? No, I didn't. I thought it came from the Wizard of Oz, but it doesn't. The fact is that is where it comes from. I think in every legal context it means someone who is not the real. So who is the real? In this case, it is the person for whom the straw purchased. We fit that within the language. We can't fit the beneficiary of a gift within the language, and that's the reason for the distinction, and so why not do it that way? With respect, Your Honor, I think that the principle you described of straw men or straw purchases, in the context, historical context you described it, I don't believe is a criminal context. And we've not been able to find any case in which the criminal law has ever recognized that sort of civil agency law principle, that when there is a principal-agent  or the straw man, that everything that the agent does is really an act of the principal. And Congress, there were historically criminal common law principles of agency. And Congress codified those principles in Title 18, United States Code Section 2. Those are things like aiding and abetting, principles and accessories. But that's not the principle on which the government relies today. The government's rules. Alito, You still have not explained what purpose is served by obtaining the name of the straw purchaser and doing an instant check on the straw purchaser. You said that it allows the tracing of the weapon, but that's not going to be true in the case of a straw purchaser, because the person who the straw purchaser isn't necessarily, and probably in the vast majority of cases, isn't going to get the name or any information about the actual recipient. That's the whole purpose of having a straw purchaser. So then what purpose is served by this? It's just meaningless. With respect, Your Honor, I disagree. And the reason is, again, that the intent of Congress in the Gun Control Act was not to trace or track where firearms were going. And so in every case, because private sales have no recordkeeping or background check requirements, in every case where there's a trace of a firearm, the government has to go all the way back to the beginning. They go to the manufacturer with the serial number and follow the gun through the stream of commerce until they find that gun dealer where the gun was first sold. And then they find the gun dealer, and the gun dealer said, I sold it to Mr. Straw. And then they go to Mr. Straw, and Mr. Straw said, my client took it. Okay, who's your client? I have no idea. He came into my store. He came, you know, he contacted me. I didn't ask his name. He didn't give me his name. And that's the end of it. So no purpose is served by putting down the name, the address, doing the check on the straw purchaser. But, Your Honor, again, Congress understood that that's how the statute worked, because, for example, if you're a gun dealer. What you're saying is they did a meaningless thing. That was the compromise. They would do something that's utterly meaningless. No, Your Honor. And the reason is, consider, for example, a circumstance where, instead of buying the firearm with the intent to resell it, 5 minutes after the purchase, walking out of the gun store, a stranger approaches you and says, that's a nice-looking gun, I'd like to buy it from you. It's perfectly legal under the Gun Control Act to sell the gun to that stranger, who then will leave, and again, in the tracing process, the government's trace will stop with that first purchaser. And Congress understood that that's how the process would work, and that was part of the compromise. What Congress wanted was accurate information about the initial person who acquires the firearm, so at least they can try to do that trace. And Congress understood that in many cases they can't do that. Scalia. In some cases, they can track it all the way. In this case, unlike the hypothetical that Justice Alito gave you, if they went to the straw purchaser, he would say, oh, I actually bought it for my uncle, and he'd give the uncle's name. And then the uncle would say, you know, where else the firearm went from him. Yes, Your Honor. In fact, in this case, the government received all the recordkeeping and background check information that they could possibly have received. They got full Federal paperwork from both Mr. Abramski and his uncle and ran a background check on both. Your position is that this is not a material misstatement, is that correct? Yes, Your Honor. Why isn't it material in light of the fact that it was a question that was on the government form that was promulgated by or that was directed by regulations? The reason, Your Honor, I think this is a critical concession by the government that's on pages 35 and 36 of their brief, is the government acknowledges that the statements on the form are just an interpretive rule and not even sort of ordinary interpretive rule that this Court may encounter with agency interpretations where they're looking at the statute, and although they have not been delegated with authority to rule-make, they are interpreting the text of the statute. Here the government acknowledges that the statement is an interpretation of the case law about the straw purchaser doctrine. And the problem with that is that there's a split in the circuits about what that case precedent should be. And the government's suggesting that this Court should somehow defer to the statement on the form, that it has the power of law, that people should acknowledge it. But, of course, when you have a case law question like this where there's a split, this Court is the authority that decides what the law should be, and it's not required to defer at all to the statements on the form.  Kagan. Kagan.            Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan.       Kagan. Kagan. Kagan. Kagan. Kagan. That Congress didn't do everything it could have to achieve that result, right, that there are many kinds of resales that are allowable, that there are gifts that are allowable. It's one thing to say that. It's another thing to say that at the initial point of sale, which is where the entire system is set up, right, with the gun dealer doing the automatic checks, that at that  And that's the way that Congress has set up the mechanism to make sure that there are no hard fronts, that we, you know, that we don't care that the person standing at the counter is a front. I mean, that goes far beyond the other kinds of resale possibilities that you're talking about. And I guess what I want to know is why you think a Congress that was geared towards this object of keeping guns out of the hands of dangerous people and set up a mechanism that had the gun seller be the kind of enforcer at the point of sale would have thought, oh, it's fine if a front, if a straw walks in the door. The reason, Your Honor, is because Congress understood that private sales, that there was an importance to private sales between citizens. And in a straw purchase like this, or someone who's purchasing a gun intending to resell it to someone else, that is precisely what's happening. That second sale is a private transaction between two private citizens. And Congress did not want any regulation of those types of sales. And that was part of the political compromise in the law. And so, yes, Your Honor, I acknowledge that you would certainly describe this as not a comprehensive regime. There are holes in the legislation. But remember, too, that Congress was not operating in a vacuum. It understood that, although there may not be a national consensus about some of these issues, and therefore the regime that Congress chose may have some holes in it, that the States could fill those holes if there was a statewide consensus on that issue. And many States have done that. Some States have, Hawaii, for example, what is really a complete gun registration system. And others, like West Virginia, believe that there should be virtually no regulation of these sorts of private sales at all. And so I think the system is working precisely as Congress intended. And if there are problems, Congress will come back and fix it. And we've seen, for example, in the Firearm Owners Protection Act and in the Brady Act, that Congress — this is an area where Congress is continuing to observe what's going on in the nation and making changes to the law as necessary. Roberts. In the situation that Justice Alito hypothesized of the person who's doing this several times a month and has the ad in the yellow pages, is that — is that person subject to regulation as a dealer? Yes, Your Honor. I wanted to make that point, and that is that, of course, if you engage in the business of purchasing firearms to sell to others, then you will at some point be subject to the licensing requirements that Congress created. So, again, this is not a system that has some obvious loophole where people can begin to engage in their own sort of sale of guns to others. This is a situation where Congress wanted to leave open the option for private citizens like Mr. Abramski to purchase guns for other lawful gun owners like family members, neighbors, and friends. But this family member, the uncle, residing in Pennsylvania, he could not have purchased that gun in Virginia, isn't that right, because he's a nonresident? With respect, Your Honor, I disagree. It's true that he could not have walked into the gun store and left the gun store in Virginia with the gun, but he could have purchased it there. Congress created a means in the statute for the gun to then be shipped to a gun dealer in Pennsylvania. And he would have to pick up the gun and, again, fill out the Federal forms and undergo a background check at that gun dealer in his home in Pennsylvania. Ginsburg-Miller, but wouldn't he have to comply with the 552C, which says how somebody who doesn't show up in person can purchase a gun? And none of those requirements was satisfied here. So it seems to me that what you're asking is just an end run around what Congress said. If you're out of State and you want to buy it, this is how you have to do it. With respect, Your Honor, I don't think that's what Congress meant in section 922C, which is the provision that deals with absent buyers. And the concern there was Congress wanted to leave open two paths for gun buyers. One is to physically be present at the gun store and fill out the papers yourself for the gun dealer as you're writing your name and age and your height and eye color on the forms. There's a person there looking at you. And there was also an option that Congress provided for people to purchase a gun, for example, by telephone or mail or over the Internet, without ever actually being present, with no person being present in the gun store. And it was in that circumstance that Congress said we think we need a little bit more recordkeeping in those cases. So that's why they required the affidavit, for example, and the waiting period to provide extra time for local law enforcement and the background check. But that's not the situation here. Mr. Abramski was physically present at the gun store, and so that provision of the statute is not even implicated here. Another point, Your Honor, is that the plain text interpretation of the statute is one that the agency, ATF, had adopted initially. In 1979, the agency sent a circular to gun dealers that took the precise position that Petitioner is taking here, which is that a purchase of a gun for another lawful gun owner is permissible. And in doing so, the agency said that that was an interpretation of the text of the Gun Control Act. Scalia What is the government's concern? I guess I should ask the government, but does the government contend that there are two buyers now, both? Is the real buyer the person who sends in the straw man, so that it's only his information that you have to give, or are there two buyers? Mr. Abramski Your Honor, I don't know the government's position, but our position is that there is one buyer, and that's the person who's actually paying for the gun, filling out the forms, undergoing a background check, and leaving the gun store with the gun in their hand. And Congress didn't use terms like true buyer or true purchaser or actual buyer because they were not concerned about the ultimate recipients of firearms or what happens to a gun after it leaves the gun store. The focus of the Gun Control Act is on that initial purchase and making sure that that purchase is made. Sotomayor What position are you taking here? Are you arguing that it doesn't matter whether it's a straw purchaser or not? A buyer is a buyer is a buyer. It's the person who puts the money down on the counter. Or are you arguing, as a backup or as your main point, I don't understand, that if it's a lawful buyer using a straw man, that that's not actionable? Yes, Your Honor. We are arguing, yes, that the person who pays for the gun, the person that's there in the gun store and pays for the firearm is the buyer. That is the or the – in fact, the term buyer isn't even used in the Gun Control Act. Sotomayor Even if their intent is to sell it to a prohibited person? That's correct, Your Honor. And in those circumstances, again, I think this is an important point, is that Congress provided a number of means to prosecute illegal straw purchasers. And all of those provisions are still available to the government, even if this Court was to disapprove the straw purchaser doctrine in all its applications. Alito If we disagreed with you on the first point about the straw purchaser, would you lose on the ground that Mr. Abramski's uncle could not have lawfully purchased the gun at that store because he wasn't a resident of the State? No, Your Honor. And two points there. First, as I mentioned, it would have been possible for Mr. Abramski's uncle to purchase the gun in Virginia. He could have gone to that gun store and said, this is the gun I want, and paid the money. He would have had to go back – the gun would have had to have been shipped to Pennsylvania, and he would have had to take possession of it in Pennsylvania after filling out additional paperwork. Alito But he couldn't have taken possession of it in Pennsylvania? In Virginia? That's correct, Your Honor. But, again, I don't think that that changes the materiality analysis, because, again, the question is not whether Mr. Abramski's uncle could have picked up or bought the gun in Virginia. The question is, if Mr. Abramski had told the gun dealer the truth, that, yes, I plan to buy this gun, but I'm going to take it up to Pennsylvania and give it to my uncle after I deliver it to a gun dealer there, the way that Congress wrote the Gun Control Act, the gun dealer still could have sold the gun to Mr. Abramski. And that's why – But would it have been a lawful sale if the gun had been delivered to him on the spot? To Mr. Abramski's uncle? Yeah. Mr. Abramski's uncle goes in, buys the gun, puts down a Pennsylvania address. The dealer gives him the gun, walks out of the store. Would that be a lawful sale? No, Your Honor. No, Mr. Abramski's uncle could not have bought the gun in another State, taken possession of it. But, again, the materiality question, the way this Court has described that standard in Cungas is whether if Mr. Abramski had provided the truthful information, if that would have been capable of influencing the outcome in that case. In describing what happened here, you said that Abramski went in and then went to Pennsylvania and gave the gun to his uncle. That's not quite correct. He transferred it to him for consideration. I had thought, and this goes back to Justice Scalia's question about if there's one buyer here or two, I had thought that it might be possible for you to construct a case where Abramski tells his uncle, I'm going to buy the gun, and then I'm going to sell it to you, and I'm going to sell it to you in Pennsylvania at a gun dealer's store so we can fill out the necessary forms. Would the government then have objected to what happened here? I mean, we can ask the government, as Justice Scalia indicated, but as you understand their case. Yes, Your Honor, I think the reason is that the government's position is that you cannot buy a gun intending to sell it to another lawful gun owner. That is the government's position. But just one point of clarification is, to the extent it's relevant, Mr. Abramski did not receive consideration for the purchase of the firearm. The record indicates that his uncle sent him a check to cover the cost of the gun. This was, in all respects, someone doing a favor for a family member. Could you address the other point here, which is the one I have more trouble with, to tell you the truth? Count 2. Yes, Your Honor. And that count, the language that Congress chose was that one cannot make a false statement about information required by this chapter to be kept. Right. This chapter meaning chapter 44, the Gun Control Act itself. And the Gun Control Act contains, it actually references as a provision, and that's 922b-5, where Congress says this is the information, it uses that term, required to be kept. And it lists three things, the name, age, and place of residence of the person acquiring the gun from the gun dealer. And then ATF has promulgated regulations that have added an additional layer of information that must be included on the forms. But the government's position, of course, this question 11, who is the actual buyer, that's not one of the things that's included. Either in the text of the Gun Control Act or in ATF's regulations. And what the government has said in this case is, well, that's right, but we view the authorization of Congress to create the form, sort of a blanket authorization to put, ask whatever we want in the form and make anything that we ask in the form, information required to be kept. Can you lie in answering questions that the government has no technical right to answer? I mean, let's assume I agree with you that, in fact, this information was the government was not authorized to obtain this information and, therefore, it was not required to be kept. But nonetheless, they asked it and your client didn't just say I won't answer, he lied. Now, can you lie so long as the question is improper? I think the key in this case is that Congress included a materiality element for almost every false statement that would occur in this context. And they enacted a separate statute that did not have that materiality requirement. And the reason was Congress wanted to be sure that that provision that did not have the materiality requirement only applied to the false statements that Congress thought were the very important ones. And, therefore, they delineated what those, that category of statements was. And the question on the form is not one of them. And that, Your Honor, is the reason why Mr. Obramski cannot be convicted under that provision. I'd like to reserve the remainder of my time for a vote. Roberts. Thank you, counsel. Mr. Palmore. Thank you, Mr. Chief Justice, and may it please the Court. I think it would be helpful if I could at the outset frame what I see as the issues here, because as some of the questioning revealed, Petitioner is making two separate arguments. His first argument is in a sense that there is no such thing as a spoff purchaser doctrine. I take that actually as a falsity argument. He's saying when I answered that I was the purchaser, that was a true statement because I'm the only purchaser who counted purposes of the statute, because I was the one standing there and I was the one filling out the form. His second argument is an alternative argument, as I understand it, and he says, even assuming I'm wrong about the first argument and that the statement was false, that that falsehood was not material because my uncle was legally eligible to possess a firearm. So I'd like to take those two arguments in order. Scalia. As to the first, are there two buyers in your view? I think in a sense there you could understand there to be two buyers. The buyer who counts under the statute, though, is the actual buyer. Well, what does the person who's buying for somebody else, he has to provide both names or just the name of the real buyer? Justice Scalia, if you hypothesize a situation in which two roommates wanted to buy a firearm together, firearms are expensive, they can't each afford their own, but they want one for personal protection, and if one went into the store and said, I'm buying this firearm for myself and my roommate who's not here, that transaction could not lawfully go forward because the two buyers of the firearm weren't in the store and they weren't physically present and they didn't go through all the statutory scrutiny process. And both of them had to take possession, right? Right. In that sense, right, right, because the whole thing is that's not the case here. The person who paid took possession, was authorized to take possession. In the straw purchaser cases, the person takes possession in an ephemeral sense. They are merely the conduit. The whole purpose and effect of the transaction is to deliver that firearm to someone else. So there are two buyers, and both of them have to be on the form. If there are two buyers, if two people or roommates are buying, they would each need a firearm. Scalia, I can understand you're saying the real buyer is the person who put up the money. Well, of course, the form tells you who the real buyer is, and it's a substance over form inquiry. And we think this is supported by not only the text, but also the structure and purpose of the Gun Control Act. Where in the Act does the basis for the requirement on the form? The form says, you know, if you're not the actual purchaser, you're buying for somebody else. Where is that in the statute? That is a ATF's reasonable interpretation of the statute, and I was just going to get to that. It's the current one. It used to have a different one. That's the current one, and it's been consistent for the last 20 years, Justice Scalia. So the statute, we think both the text and the structure and purpose support this view. The text is most readily identifiable in section 922a6 itself, which this Court in Huddleston 922a6, which is the count one of the conviction. It's the false statement provision at issue here. And this is quoted at pages 1 through 2 of the government's brief. So the provision says, It shall be unlawful for any person in connection with the acquisition or attempted acquisition of a firearm, and it goes on. And it talks at the end, it talks about the lawfulness of the sale or other disposition of such firearm. This case isn't the first one in which the Court has had occasion to interpret those terms. In Huddleston, the Court looked at those terms, in particular acquisition and disposition, and it said several things about those terms that are relevant here. It said those terms are meant to have a practical, common-sense meaning in terms of who will come into possession and control of a firearm as the result of a transaction with a Federally regulated dealer, and they don't turn on formal notions of legal title. And that with respect to disposition in particular, that it was that Congress meant to give broad effect to this term. And so we think that the same kind of practical, common-sense inquiry is applicable here. When looking at the transaction, the question is, what is the ultimate purpose and effect of this transaction? Is it to have someone else acquire the firearm? Breyer, it isn't the language. His point is, I think, that the statute, it has to be material to the lawfulness of the sale. Now, we look to see what section is it material to. And you say in your brief it's material to the section that says you have two of them, but they come to the same thing. Selling or delivering any firearm to any person. All right? Now, he says did they sell or deliver this firearm to what you call the real purchaser? He says no. They sold or delivered it to the straw. And that's the end of the matter. And at least the statute is open to this interpretation, and it's a criminal statute. And besides, the ATF for a long time started to interpret it that way. So what we should do is interpret it strictly. Now, that's, I think, the basis of their argument, if I understand it. And so you have to get those words, sale and deliver, and explain how in the criminal statute they apply to what you're calling the real purchaser. Right, Justice Breyer, the statute uses a number of different terms to connote what we take to be a substance over form inquiry into the actual possession and control of the firearm. So in 922a6, as we were just talking about, it talks about acquisition, sale or disposition. But you also quote material, the need for it to be material to the lawfulness of the sale. You seem to concede that in the brief, it has to be material, and there are two sections, and both come to the same thing, which is what I said. So this is where we get back to the fact that there are two different issues in this case. If I convince you that there was a false statement here because Petitioner's uncle was the actual purchaser. If he was, if he then, if he is the actual purchaser, then he falls within the term of a person to whom the firearm was sold or delivered. That's your argument. And his name wasn't put on the form. Oh, there's no question about that. Right. So if I could just finish one other thought on this first issue of falsity. And as Justice Sotomayor and Justice Alito's hypotheticals demonstrated, under Petitioner's view of the statute, I could approach someone in the parking lot outside of a licensed dealer, I could say, would you like to make a quick buck, please come in with me, I could point to the firearm I want, I could hand him the money, I could look over his shoulder as he fills out Form 4473 in his own name, I could watch the dealer run that person's name and identity through the criminal background check, and as we leave the shop together, he could hand me that firearm. Why is that any more horrible than the notion that as soon as I buy it, I walk out of the store and I meet this guy in the parking lot, he says, hey, that's a nifty looking gun there. How much did you pay for it? He says, you know, I paid $600. I'll give you $700. Oh, it's yours. Right? I can hand it to him, can't I? You could, Justice Scalia. So the notion that the gun would somehow get into the hands of somebody who, you know, who wasn't registered or who couldn't buy it himself, I mean, that's going to happen anyway. This what you assert does not stop that problem. Justice Scalia, Congress was obviously balancing a number of interests when it enacted these provisions. If you read the text of the statute in the legislative history, it's clear that Congress thought the principal problem was effectively unregulated sales of firearms from dealers. That's the problem it wanted to focus on. And you're right that it didn't want to go further and intrude on private transactions among unlicensed individuals. It drew a line and it – but it drew a line at a point where it thought the actual problem was, and that line was up to and including the point of sale. But, Mr. Palmer, when the agency changed its view in 1994, there was no change in the statutory text, was there? There was not, Justice Ginsburg. And at that time, the interpretation was that you committed the offense if you sold if the person, the true buyer, was an unlawful, a person to whom firearms were not allowed to be sold, but if you – if the ultimate possessor was a lawful possessor, then there was no liability. So the statute has to be open at least to two – to either interpretation. No change in the words. The agency read it one way and then later changed its mind and read it the other way. That's right, Justice Ginsburg. And I think that takes us to the second issue here, which is the materiality issue. And I think what happened was that the agency's earlier view of the statute was essentially overtaken by the case law in several respects. And the agency, therefore, updated its view and has consistently applied that view for the last 20 years. Breyers, but still, look, what I thought was a very good argument on your side is exactly what I said, that the narrow interpretation would also apply to a straw man who buys a gun for Al Capone. And so this part of the statute would be virtually worthless. Their response to that is don't worry about that. There are plenty of other provisions that will take care of that, are there? And if it's so obvious about the Al Capone, why did the ATF decide it their way for 20 years? I mean, how did they get into that? Justice Breyer, I think that the other provisions that Petitioner is referring to is 922d, which makes it unlawful for anyone, licensed or unlicensed, to transfer a firearm to someone in a prohibited category if the transferor knows or has reasonable cause to believe that the person is in a prohibited category. And that is a completely inadequate substitute for what the kind of regulation we're talking here for a variety of reasons. One is the mens rea requirement that I just mentioned. So on my hypothetical involving the parking lot, the person, the straw purchaser doesn't even know my name, much less anything about my background, whether I was dishonorably discharged from the military, whether I had mental health issues, doesn't know anything about me. He has no reason to ask. I certainly have no motivation to tell him. And yet that transaction can go forward, and this could be very difficult to prosecute that straw purchaser for an illegal transfer if it turned out that I was a felon. Second is the whole purpose of this, structure of this statute, especially after it was amended in the early 90s, was to not, was to put in place and reinforce a dealer-based regulatory system in which the eligibility of firearm transferees is determined based on a search through a database. We don't take even the transferees say-so as to whether or not he's an eligible person. He has to fill out the form. Roberts, it's very problematic to talk about the overriding purpose when you're dealing with a very sensitive compromise. There's, as far as I can tell, nothing in the language of the statute that talks about straw men or actual buyers or anything like that. You're right, Your Honor, just as there's nothing in the mail or wire fraud statute that talks about Ponzi schemes, that a Ponzi scheme is simply a way, a way. Well, but there wasn't a strong lobby in Congress saying we're the group that supports Ponzi schemes. So maybe it makes more sense to have a broad construction of that provision. This language is fought over tooth and nail by people on the, you know, gun control side and the gun ownership side. And to say, you look at it and say, well, the purpose is this, even though there's no words in the statute that have anything to do with straw purchasers, I think it's very problematic. Well, Your Honor, I think we do have a textual argument, which I referred to before. But there's also, it's not just a purpose argument, it's a contextual and structural argument. And it's the one that Justice Alito alluded to in his question. Roberts. Roberts. You agree that from Justice Alito's example, that person is regulated as a gun dealer, right? At a certain point, a person, if they're operating as a seller of firearms, they would have to register. Well, I meant my hypothetical. So he doesn't have, he doesn't put it in the yellow pages and he doesn't put it on the internet. He just hangs around in the parking lot of Joe's to accommodate people who, and Joe's is near the border, and he wants to accommodate people who may take, who may wish to employ him as a straw purchaser. Right. You wouldn't think of prosecuting him, would you? I mean, at a certain point, if the conduct is so pervasive and regular, if he's acting as a dealer, then you might be able to get him on that separate provision. But you're right, before that point, you wouldn't necessarily be able to, and that would be a perfectly lawful conduct. And it's also important to talk, we were talking, Justice Breyer, about knife. Before you go on, I wanted to get back to the Al Capone hypothetical. As I understand Petitioner's case here, he, I don't think he's asserting that if Al Capone, if he intended to transfer it to Al Capone, that his statement would not have been material. His position is, since I intended to transfer it to somebody who could lawfully possess it, the statement was immaterial. And my point, Justice Scalia, is that in a straw purchase context, you're not necessarily going to know you're dealing with Al Capone or someone of his record. These are often cases in which people have an ephemeral relationship. They may not even know each other's names. Kagan. Kagan.              Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. to somebody he knows as Al Capone, but that he would be, you know, because he was the guy at the counter, and he was buying for somebody else. As to this question of material representation, it does not matter whether the ultimate transfer rate was Al Capone or somebody else. I think that's right, Justice Kagan, and that's his first argument, and what I take to be his main submission is essentially that his statement was true. I think he said that. It was true, so you don't even get to the materiality question. So that's right. That subsequent transfer might separately be a violation if he knows or has reasonable cause to believe that the transferee is in a prohibited category. I would just point out, though, that that would not have been the case from 1968 to 1986, because 922d, which prohibits transfers to ineligible transferors ‑‑ I'm sorry, transferees, applied only to licensed dealers until 1986. It didn't apply to private individuals. So the kind of straw purchase on behalf of Al Capone, as I understand it under Petitioner's theory, would have been perfectly legal from 1968 to 1986, even if it was knowing. Justice Ginsburg, we talked a little bit before about how ATF's view kind of caught up with the case law, and I think some of that case law is actually quite helpful here for illuminating the materiality question, and it's the Crandall case from the First Circuit that we talk about in the brief. If Petitioner is correct that the materiality of a false statement turns on whether the ultimate ‑‑ in this context, whether the ultimate purchaser or the actual transferee of the firearm was eligible or not, it's unclear why a ‑‑ someone seeking to buy a gun from a Federally regulated dealer couldn't go in, provide a false name and provide a false identification, and receive a gun, and then if he's not eligible for that false statement, he could defend, as the defendant in Crandall tried to defend, saying, well, it didn't really matter because I'm actually eligible. So even if you'd known my true name and had my true nonforged ID, you would have sold me the gun, so it's not material. The courts of appeals in the lower courts have consistently rejected that argument. And what those courts hold is that in all cases, the lawfulness of the sale of a firearm from a regulated dealer is contingent on the recording, confirming and, after 1993, screening of the identity of the purchaser. Roberts, this now you're talking about the second question. Correct. And the provision that makes the information that's required, makes it material ‑‑ correct me if I'm wrong, is 922b5, right? That's what requires that. Okay. Now, all that says is you have to keep the information of the person to whom you're transferring the firearm. So your argument has to be when somebody sees the person, they realize that that means not somebody who's buying it for somebody else, right? Right. And if you're with me on the straw purchase idea that this was a false statement because the purpose and effect of the transaction was to ‑‑ for the uncle to acquire the firearm, then that was a false statement, then the actual purchaser's name would be recorded. If I assume you're right, then you're right. If you assume I'm right on issue 1, then I think the materiality on issue 2 follows directly from this provision that you've quoted, 922b5. And I think that's true. Because then person, you know, carries with it the concept of not just the person to whom it's transferred, which is what 922b5 says, but the fact that it has to be the actual person who ends up with the gun. Yes. And I think the term needs to be looked at in context. It's not just 922b5. There's also 922t, which is the Brady provisions. And there it talks about a transfer. So we talked before about how there are different terms that are used. Well, 922t, which says that you can't ‑‑ Where is that? This is on page 13. No, I apologize, Justice Scalia. There's not an appendix. But this is quoted in relevant part on page 13 of our brief. So 922t says that no transfer of a firearm can take place unless the identity of the transferee is confirmed with a photo identification and unless that identity is screened through a database to ensure that that person is eligible for a transfer.  Well, see, I would have thought that if you're right on question 1, 922t just makes this a slam dunk on question 2. And there's a question about whether you're right on question 1. But if you are, T says, look, the dealer is supposed to check the transferee, right? And if we assume that when Congress says the transferee, it's the real transferee, not the fake transferee, the dealer is supposed to check the real transferee. So what does the dealer think is material? I mean, the question is what does a reasonable dealer think is material? I better know who you are so I can check you. That's material. I think that's right, Justice Kagan. I think that anyone looking at 922b-5, Chief Justice Roberts. I can't look at all these things because they're not in your brief. I really resent, especially in statutory cases, not having the statute in front of us. I shouldn't have to flip through your brief to see what page you cite a little snippet from one section of it. You're right, Justice Scalia. I apologize for not including a fuller statutory appendix in this brief. But the point is of 922b-5, when it asks for the name of the buyer, one would ask, well, what reason, why is this name relevant? Why is this question being asked? And this goes to Justice Alito's observation about the structure and purpose of the statute. This name is clearly being asked because Congress cared very much about preventing anonymous sales of firearms. It cared very much about having a record of who that first buyer was. Kagan. Well, it's not just the structure. It's not just the overriding purpose. 922d-t says that the dealer is supposed to check the transferee to find out whether the transferee has a criminal record, to find out whether the transferee has mental illness. So who does he check? Who is the transferee? Well, I need to know who the transferee is to make that check. So obviously, it's material to know who the transferee is. I agree, because those requirements would be pointless if they could be satisfied. Breyer. But isn't it going to be the same problem, which is the straw, because the transferee in context probably refers to the person to whom the dealer transferred the weapon, namely the buyer. And does it apply, for example, if he knows that the buyer is going to give the weapon to another person, and you will say no, and he's not the transferee, the other person? You admit that, you say it. And so why is the person to whom the one who puts up the cash is going to later transfer the weapon is the same question as to whether he is really the purchaser. I just don't see a difference. And therefore, I thought, but you can explain to me why there's a difference. I'd like to know that, and I guess I'd like to bring you back to the issue, and I'd just like to know how the ATF reached the contrary conclusion, if it would so undermine the statute. Well, Justice Breyer, a couple points about this. One, as we talked about before, we think Huddleston suggests that these terms, and Huddleston was interpreting acquisition and disposition, and it gave, it was stressed that these had a practical, common-sense meaning about who was going to obtain possession or control of the firearm as a result of the transaction, as a direct result of the transaction. And what about the donee? The ATF has never interpreted this provision to prohibit gifts, and a gift recipient is in no sense a party to the gift giver's purchase of the gift. That's just not the way we think of gifts. The purchaser may change his mind. The purchaser is not acting at the direction and control of the gift recipient. And in ATF's experience, there's not a problem with gift recipients. Sotomayor, Committee on the Protection of Guns, I'm sorry. Sotomayor, you don't think crime bosses look at their underlings, pay them a lot of money for whatever they're doing, and just say, go get me a gun and give it to me? Well, I think that that, I would suggest that that wouldn't be a gift under that scenario, Justice Sotomayor. If that person is working for the crime boss and it's part of his duties to go obtain a gun, then he's buying that gun on behalf of the crime boss. Could you answer Justice Kennedy's question? Is this all contingent on the intent at the moment? I mean, you had a lovely wrapped case here because you had the money transferred before the purchaser, so there's no question that the intent was to purchase for the uncle. But what about the situation where there's a conversation beforehand that says I'm going to buy the gun and I'll sell it to you afterwards? I think the question, there could be a factual question in some of these cases. The question would be, was that purchase made on behalf of someone else? There's no factual issue here. This was a guilty plea. So we have to assume that this transaction was made on behalf of the uncle. As a factual matter, Petitioner disputes whether that matters legally or not. Sotomayor, I'm not sure what you mean. I gave you a hypothetical. What else did it have to do with it? Right. In your hypothetical, I think that would be a straw purchase. That purchase was made, even if the money was going to come later, that purchase was made on behalf of the absent party, and it can't proceed for a variety of reasons. Scalia, this is a criminal statute, and you're saying that when I buy it and I told somebody I'll sell it to you later, that I am acting as an agent, and, wow, it's a criminal statute. Justice Scalia, in Huddleston, it's helpful in this regard, too, there was a notice rule of lenity argument made there, because the person in that case wasn't actually buying the firearm. He had pawned it to the pawn shop and he was redeeming it. And he came in and said, I'm not buying it. I'm just getting my own property back. I'm not buying it or acquiring it. And the Court relied, in rejecting that argument, relied in part on Form 4473, because it provided notice that he had to check these boxes and had to truthfully answer the question. I think it's rare that you get a case with this degree of notice when the defendant is actually committing the offense and making the false statement. He's told in bold letters right in front of him not to do what he's about to do, and it includes a hypothetical. Roberts, he's not told that in the statute. He's told that in a form that was quite different from the form that was used before. That's right, Chief Justice Roberts. It's a form that's been used consistently for 20 years, and for the reasons that we've said, we think that the current view of the ATF and the express instructions on the form are actually the most consistent with the statute, because the statute requires identification of a firearm purchaser to be recorded, confirmed and screened in every case. That's not contingent on the person turning out to be eligible or not. Congress wanted to prevent anonymous sales of firearms, and it had a purpose, obviously, to keep out of it. Kennedy, whether or not there was a sale, suppose the fax in this case, and it was a Glock, I think, was delivered, and suddenly the, Abramski finds that it's a valuable collector's item, there were only two or three of these made, it had a special trigger or something. And it's now immensely valuable. Could the uncle insist that it be sold to him for the $700? Or for the agreed-up price, the $400 thing? I think it's not clear, Justice Kennedy. There might be a contract claim between them. Well, if it isn't, then there wasn't, then there was a subsequent sale. Right. But, of course, here there's no subsequent sale, because the check was written down. Well, I'm asking about that. Right. I think if the Petitioner changed his mind and decided not to actually transfer it, I think as a technical matter that wouldn't affect the legality, because what mattered was, was he making a purchase on behalf of another and entering a false statement at the time he made it. A fact question could arise in a situation like that, which a defendant could argue, I wasn't actually making the purchase on behalf of someone else, and that argument is supported by subsequent events. But I think we were – I was about to say that the one critical purpose of the statute, obviously, was to keep firearms out of the hands of ineligible persons, but another critical purpose was to allow for the tracing of firearms and to prevent the anonymous stockpiling of firearms. And with respect to that purpose, I think the facts of some of the cases underlying the circuit split on the second issue of materiality are quite salient. Those are all cases in which eligible parties wanted to anonymously obtain large quantities of firearms for illicit reasons. They were eligible, but they had – they wanted to not have their name associated with the transaction. So Polk, which is the Fifth Circuit case, which is actually on Petitioner's side, that person wanted to anonymously acquire firearms to create a stockpile to attack an IRS building, to kill police officers, and to assassinate a judge. But he was eligible. In Frazier and Morales, which are the Eleventh and Sixth Circuit cases addressing this materiality issue, they were straw purchases on behalf of eligible buyers, but they were, again, wanting to anonymously stockpile weapons and not have their names associated with them because they were smuggling them out of the country. And the Petitioner's view of the statute in which a straw purchaser can satisfy the requirement that the first transaction at the point of sale be recorded would completely satisfy the statutory requirements would greatly impair the ability of ATF to trace firearms and to have an accurate record of who that first purchaser of the firearm was. If there are no further questions, we'd ask that the judgment of the court of appeals be affirmed. Roberts. Thank you, counsel. Mr. Dietz, you have four minutes. Justice Ginsburg, you asked counsel whether this was a case where there were two interpretations of the statute. Counsel conceded that there were. I think that's an important point because, of course, we're dealing with a criminal statute. If there are two interpretations, under very well-settled precedent from this Court, the Court applies the interpretation that's favorable to the criminal defendant, and that's part of the doctrine of criminal law. Justice Kennedy, you mentioned the agency situation that existed here between Mr. Abramski and his uncle. And here, I think it's important to note that there wasn't even any consideration. This was truly a purchase that was just a favor for a family member. And the government, in order to advance this straw purchaser theory that historically came from civil common law, there needs to be a relationship between Mr. Abramski and his uncle that is a fiduciary relationship, where Mr. Abramski is required to act in his uncle's best interests at all times. And that, for example, if he left the gun store and someone said, hey, did you just pick up a Glock, I'll buy it for you for $500, that Mr. Abramski could not even enter into that sale without providing his uncle with any money he made from that sale. And there's a complex set of civil agency law principles that apply here that just don't translate to the straw purchaser doctrine as we've described it. And I think that's a fundamental flaw in the government's theory, is that the courts just have never thought through all of the various situations that apply in these fiduciary relationships and how you would apply them to situations where you're just buying a gun for a family member or something of that nature. I also wanted to turn to the gift exception. There's also another exception the government acknowledges, and that's for raffles and contests at charities or, you know, political fundraisers. And so in that circumstance, the person who's buying the gun knows that they're giving it to a complete stranger and someone who by random chance wins the right to own the gun. But in those cases, the government says there's no need at the time that you buy the gun to take any steps to ensure there's recordkeeping or a background check on that person. And I think that undermines this idea that everyone receiving a gun, as it's in the chain from the gun dealer, Congress wants to have a background check. Congress is concerned about providing enough information to allow for tracing and nothing more. And as a final point, Your Honors, I think perhaps the most important point in this case is if the court rejects the straw purchaser doctrine as it applies in this case to a lawful gun owner buying for another, there are really no harmful consequences. The government retains a very robust toolbox of criminal statutes to prosecute illegal straw purchasers, those who buy guns to get them into the hands of prohibited persons. And the government will receive accurate, truthful information about that first sale so they can trace firearms when they're used in the commission of a crime. So the only thing the straw purchaser doctrine in this case really accomplishes is to prohibit law-abiding citizens from buying guns for other law-abiding citizens. And that's something that Congress expressly chose not to do, and we would ask this Court to remain faithful to the statutory scheme actually enacted by Congress. Alitoso, if we agreed with you on the second argument, would the government have to prove that the person to whom the straw purchaser transferred the gun was ineligible, or would it be a defense if it was shown that the person was eligible? I think the government would have the burden there, Your Honor, and I think the government has suggested that they provide an example of a circumstance where the person who bought the gun was buying it for someone named, I believe, Almanio, who they had no idea who that was. But, yes, in that circumstance, the government would need to prove that that person was prohibited. But I think in circumstances like that, where you're buying guns for someone you don't even know who that person is, the government may well have evidence in that case that you either knew or had reasonable cause to believe that that person was prohibited from possessing a gun. Breyer. But the other purpose that they said this provision has is to get gun dealers to run checks. And you can't run a check if the name isn't there. That's right, Your Honor. And, of course, you can't run a check on someone who wins the gun in a raffle or a lot of things going on. Yeah, but the other problem, and then we're back to the language, they say your client, you know, falls within the language, and you say he doesn't. Forget it. Thank you. Thank you, counsel. The case is submitted.